Robinson *v.* Robinson, Appellant.

Argued April 12, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert W. Beatty,* with him *Harrold R. Gill* and *Butler, Beatty, Greer & Johnson,* for appellant.

*Robert E. Porter,* with him *Harold D. Greenwell,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1949:

This is a proceeding to restrain the prosecution of a divorce action in a foreign jurisdiction.

Mariana Robinson, appellee, filed her bill in equity on September 26, 1947, averring that her husband,

Walter H. Robinson, appellant, had removed to Coeur d'Alene, Idaho, for the sole purpose of obtaining a divorce and praying for an injunction restraining him from prosecuting a divorce action against her in any court other than the Court of Common Pleas of Delaware County. On the same date a preliminary injunction was issued and supplemental service authorized to be made upon appellant in Idaho. Service of the bill, the preliminary injunction and the order directing supplemental service was made upon the housekeeper at the residence of appellant's father in Swarthmore, Delaware County, where appellant lived for a period of approximately ten months following separation of the parties on September 9, 1946. Service was not made on appellant in Idaho.

On January 30, 1948, on petition of appellee averring that appellant had procured a final divorce in the State of Idaho on October 3, 1947, and had entered into another marriage in the City of Vancouver, Washington, on October 11, 1947, the court below granted a rule on appellant to show cause why he should not be .declared in contempt of court and why a warrant should not issue for his arrest. Service of the rule was made personally on appellant in Vancouver, and on the return day he entered an appearance *de bene esse* and filed a petition under the Act of March 5, 1925, P. L. 23, 12 PS 672-675, on which the court below granted a rule for preliminary determination of jurisdiction. After hearing, an order was entered discharging the rule, and this appeal followed.

The validity of the Idaho divorce obtained by appellant is not before us for consideration. The only question is whether the court below acquired jurisdiction over appellant in this proceeding to restrain its procurement. As recognized by the court below, the controlling issue is whether the residence of appellant's father was also his residence, within the meaning of Rule 1009

(b) (2) (i) of Pennsylvania Rules of Civil Procedure, at the time of service of the preliminary injunction.[1] The court below took notice of the distinction to be drawn between "the domiciliary requirements for obtaining a valid divorce and the distinct issue of the requirements for the service of process" under Rule 1009, and expressed the view that in the absence of controlling precedent it would have decided that jurisdiction over the appellant had not been acquired, since he was not actually a resident of Delaware County at the time of service of process. However, the court concluded that it was compelled to hold otherwise because of the decision of this Court in *Janney v. Janney,* 350 Pa. 133, 38 A. 2d 235, which it interpreted as holding that the term "residence", as used in Rule 1009, authorized service upon the defendant "at his last address in Pennsylvania before leaving for another State."

In *Janney v. Janney,* supra, the court below found as a fact that the defendant's absence from the state was a mere temporary absence, for a limited purpose only, and we were of opinion that the evidence sustained that finding. There the evidence disclosed that the de-

---

[1] Equity Rule 27 (12 PS 1221) provides: "Writs of summons in equity cases shall be served and returned as in actions at law; bills in equity may be served by any adult person, and, in default of an appearance of the person served, an affidavit of proof of service shall be made and filed. Service may be made on the Commonwealth, and on non-resident defendants, in the manner prescribed by statute; and, if no method of service is provided thereby, then, if this is allowable by chancery practice, in such a way as may be directed by the court. The court, or a law judge thereof, may direct how service shall be made in special cases.

Service in actions at law is governed by Pennsylvania Rule of Civil Procedure 1009(b), which provides: "When the defendant is an individual, the writ of summons, or the complaint if the action is commenced by complaint, may be served . . . (2) by handing a copy (i) at the residence of the defendant to an adult member of the family with which he resides; but if no adult member of the family is found, then to an adult person in charge of such residence . . ."

fendant's business was in Philadelphia both before his departure and after his return, on the very day he received his Nevada decree of divorce. During the entire period of his stay in Nevada defendant continued to maintain in full operation the apartment in Philadelphia which he admitted was his home and residence before he went to Nevada and to which he immediately returned with a divorce decree as the sole apparent token of his sojourn. All the facts and circumstances in that case indicated beyond question that the defendant's absence from his established residence in the City of Philadelphia was temporary only and for the sole and limited purpose of securing a divorce. Here the evidence discloses that the parties separated on September 9, 1946, on which date appellant removed to the home of his father in Swarthmore, Pennsylvania, and thereafter on June 17, 1947, they entered into a separation agreement which provided for conveyance to the wife, as sole owner, of the residential property theretofore owned by them as tenants by the entirety; for the division of personal property and the custody of the children; and for the support and maintenance of the wife until remarriage and for each child until the age of twenty-one years. Appellant occupied a guest room at his father's house from the date of separation until July 2, 1947, on which date he left his father's house in Swarthmore in his automobile, with a trailer attached filled to capacity with his personal possessions, arriving at Coeur d'Alene, Idaho, on July 9, 1947. Unlike the defendant in the *Janney* case, appellant did not return to Philadelphia following the divorce decree, but proceeded to Vancouver, Washington, where he purchased a dwelling house, became eligible for admission to the bar of that State, and he has since resided there.

In ascertaining the meaning of the word "residence" in a particular legal phrase, it is necessary that the object as well as the context be kept in view. Restatement, Conflict of Laws, section 9, comment (e) ; Good-

rich, Conflict of Laws, 2d ed., section 17, page 30. Irrespective of the terms employed, since substituted service is a departure from the common law, provisions therefor must be construed in a manner consistent with a purpose to assure that the defendant will actually get knowledge of the commencement of the action against him and of his duty to defend. "Domicile" and "residence" are not convertible terms. Domicile is a matter of intention; residence is a physical fact: *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 343, 10 A. 2d 888; *Rosenberg v. Rosenberg,* 163 Pa. Superior Ct. 138, 141, 60 A. 2d 350. "A debtor may have his residence in one state while his domicil is in another, and . . . although his legal domicil is in a state, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an actual nonresidence": *Raymond v. Leishman,* 243 Pa. 64, 71, 89 A. 791. See also *Dorrance's Estate,* 309 Pa. 151, 163 A. 303. The Procedural Rules Committee and this Court were well aware of this distinction in formulating and adopting Rule 1009 (b) (2). In this connection, it may be noted that while Rule 1009 (b) was drafted to follow the general principles of the Service Act of 1901, P. L. 614, section 1, cl. 1, 12 PS 291 (suspended by Rule 1451 (a) (10)), the separate provision of the Act of 1901 authorizing service upon an adult member of the family at defendant's "dwelling house" was omitted as "repetitious and unnecessary": Goodrich-Amram, Actions at Law, Prelim. Surv., page 79.

In accordance with the great weight of authority it was held in *Raymond v. Leishman,* supra, that the words "not residing within the Commonwealth", as used in the Act of June 13, 1836, P. L. 568, as amended by the Act of March 30, 1905, P. L. 76, 12 PS 2891, providing for issuance of writs of foreign attachment, are not the equivalent of and do not mean "not domiciled within the Commonwealth." This Court there concluded

(p. 70) that the term "residing" as used in the Act of 1836, as amended, must be construed to mean "actual and not constructive or legal residence or domicil." See also *Magel v. Springs*, 338 Pa. 452, 12 A. 2d 558. Similarly, the term "residence", as used in the substitute service provisions of Pa. R. C. P. 1009, must be construed to mean "actual residence" and cannot be held to mean or be the equivalent of "constructive residence" or "domicile" as contended by appellee. To hold otherwise would result in the anomalous situation that the same person would be subject to both an action in assumpsit and foreign attachment at one and the same time.

In *Meng v. Meng*, 47 D. & C. 429, cited by appellee, as in the *Janney Case*, the evidence established merely a temporary absence for a limited purpose. In *Alburger v. Alburger*, supra, the question was whether the libellant in a divorce action was a "bona fide resident" at least one whole year immediately previous to filing the libel as required by the Divorce Code of May 2, 1929, P. L. 1237, section 16, 23 PS 16. The jurisdictional question in *Rosenberg v. Rosenberg*, supra, was whether the libellant in a proceeding for a divorce *a mensa et thoro* was a resident of Philadelphia County within the meaning of section 15 of the Divorce Code, 23 PS 15, which provides that "All petitions or libels for divorce shall be exhibited to the court of the county where either libellant or respondent resides." And in *Second National Bank v. Gardner*, 171 Pa. 267, 33 A. 188, "The only negation of intention to return [was] by an inference from the circumstances, drawn by his wife, who expressly [admitted] that she had no information from him on the subject." None of these decisions rules the question presented in this case.

Order reversed at appellee's cost.